JL

WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dayshaun Darion Conner, | No.   CV-23-02525-PHX-JAT (JZB) |
| Plaintiff, | |
| v. | **ORDER** |
| K. Taylor, et al., | |
| Defendants. | |

**I.    Procedural History**

On December 5, 2023, pro se Plaintiff Dayshaun Darion Conner, who is confined in the Arizona State Prison Complex-Lewis (ASPC-Lewis), filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed In Forma Pauperis.  In a January 10, 2024 Order, the Court granted the Application to Proceed and dismissed the Complaint because Plaintiff had failed to state a claim.  The Court gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order.

On January 12, 2024, Plaintiff filed his First Amended Complaint.  In a March 26, 2024 Order, the Court dismissed the First Amended Complaint because Plaintiff had failed to state a claim.  The Court gave Plaintiff 30 days to file a second amended complaint that cured the deficiencies identified in the Order.  The Court warned Plaintiff that the Clerk of Court would enter a judgment of dismissal with prejudice if he failed to timely file a second amended complaint.

Not having received a second amended complaint or a motion for extension of time,

on May 10, 2024, the Clerk of Court entered a Judgment of dismissal with prejudice. The Clerk of Court sent the May 10, 2024 Judgment to Plaintiff at his address of record. On May 13, 2024, the mail was returned as undeliverable because Plaintiff was out to court in Maricopa County.

On August 21, 2024, Plaintiff filed a "Motion for Excusable Neglect Pursuant to FRCP 60(b)(1) and (6), Prayer to Reopen Case and for Leave to File a Second Amended Complaint" and lodged a proposed Second Amended Complaint. In an October 11, 2024 Order, the Court construed the Motion as a Motion for Relief from Judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, granted the Motion, and directed the Clerk of Court to vacate the May 10, 2024 Judgment, and reopen this case. Because Plaintiff stated in his Motion that he never received the March 26, 2024 Order and did not have the benefit of that Order when he the lodged his proposed Second Amended Complaint, the Court directed the Clerk of Court not to file the lodged proposed Second Amended Complaint and gave Plaintiff 30 days to file a Second Amended Complaint that cured the deficiencies identified in the March 26 Order.

On October 29, 2024, Plaintiff filed a Second Amended Complaint. In a December 23, 2024 Order, the Court dismissed the Second Amended Complaint with leave to amend because Plaintiff had failed to state a claim. The Court gave Plaintiff 30 days to file a third amended complaint that cured the deficiencies identified in the Order.

On January 14, 2025, Plaintiff filed a Motion for Extension of Time to Amend (Doc. 18), and on January 28, 2025, he filed a Third Amended Complaint (Doc. 19). The Court will grant the Motion insofar as the Court will accept the Third Amended Complaint as timely filed, and order Defendants Taylor and Carter to answer the Third Amended Complaint, and will grant Plaintiff 120 days to file discover Defendant Doe #1's actual name and to file a notice of substitution.

**II.   Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28

U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**III.    Third Amended Complaint**

In his single-count Third Amended Complaint, Plaintiff sues Sergeant Kimo Taylor, Corporal Christopher Carter, and Correctional Officer (CO) II Doe #1 in their official and

individual capacities.[1]  Plaintiff asserts an Eighth Amendment excessive force claim.  He seeks compensatory relief and punitive damages as well as his costs and fees for this case.

Plaintiff alleges the following:

On October 12, 2023, Plaintiff "advised multiple correction officers of his previous commissary store purchase, from his previous housing unit."  Plaintiff "continuously request[ed] multiple" Arizona Department of Corrections, Rehabilitation and Reentry "higher officials to asses[s] and gain control of the situation but was refused/denied assistance by lower ranking C.O. II[]s, corporal[], and sergeants."  Plaintiff covered his cell door window, which "cause[d] officers to initiate an [Incident Command System (ICS)] for disorderly conduct" and an ICS "for medical chest pains."  This "led to multiple higher officers being involved."  Plaintiff uncovered his cell door window "without becoming aggressive or posing [a] threat[], towards officers or himself."  Plaintiff then "stood down from" his ICS and willingly submitted to multiple restraints, including handcuffs, leg iron shackles, and belly chains, and was placed into a restraint/transport chair and taken to the medical unit.

At the medical unit, medical staff evaluated and cleared Plaintiff, and he was placed in a holding cell.  A "psych associate" evaluated and cleared Plaintiff to return to his cell.  In his cell, Plaintiff used the restroom.  Officers initiated another medical ICS, and Plaintiff was again placed in restraints, taken to a holding cell, and advised that medical staff would come to him, "not the other way around."

While Plaintiff was waiting for medical staff to arrive, Defendant Taylor told Plaintiff that he was "going on a security/mental health watch" due to "threatening

---

[1] Plaintiff cannot obtain money damages from Arizona Department of Corrections, Rehabilitation and Reentry employees in their official capacities.  A claim against an individual in his official capacity is "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted); *Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them.").  The Court will therefore dismiss Plaintiff's official-capacity claims.

behavior," although Plaintiff "never displayed any type of threatening behavior." Plaintiff "nudge[d] off the holding cell wall[,] pushing himself further into the holding cell area." Plaintiff was secured in handcuffs, belly chains, and leg iron shackles and was strapped into a mobile restraint chair and was incapable of moving. "[A]ll of a sudden," Defendant Taylor, "without pro[b]able reason/cause," lunged at and slammed into Plaintiff and aggressively placed him in a chokehold. Defendant Taylor repeatedly choked Plaintiff "for what seemed like long minutes," causing Plaintiff to lose vision and nearly lose consciousness, "letting go of his grip." Defendant Doe #1 "aggressively restrained" Plaintiff's legs, then let go, drew his handheld taser, and asked, "Should I tase him?" Defendant Doe #1 tased Plaintiff in his lower body, causing his body to seize, while he was already subdued. Defendants Taylor and Doe #1 left the holding cell, and Taylor directed other officers to "fill" his and Doe #1's "spot using physical force to sub[]due" Plaintiff.

Moments later, Defendant Thomas returned to the holding cell and again aggressively placed Plaintiff in a chokehold for "long minu[tes]." Thomas aggressively grabbed Plaintiff's throat and "clamp[ed]" his lower jaw, which cut off circulation and made it difficult for Plaintiff to breathe. Defendant Taylor then left the holding cell again, and Defendant Carter entered with another officer. The officer pushed Plaintiff's head and neck between Plaintiff's legs and grabbed Plaintiff's face, forcing his fingers into Plaintiff's mouth. Plaintiff "tried telling" Defendant Carter but was ignored. The officer aggressively struck Plaintiff with a closed fist in the side of his head, causing Plaintiff to lose vision and nearly lose consciousness and to see black and white spots. Defendant Carter then applied his full body weight on Plaintiff's head and neck, causing unbearable pain. The officers threatened to "place [P]lainitff on the ground out of the restraint chair and use excessive force and even fog him."[2]

Plaintiff was placed on a four-day security/mental health watch, during which officers and nurses "excessively h[eld] him down" while he was already subdued with

---

[2] The Court notes that Plaintiff was found guilty of disorderly conduct and assault on staff that did not involve serious injury, with a violation date of October 12, 2023. *See*

physical restraints and in a restraint chair, to sedate him "with some sort of needle injection."

Plaintiff alleges that "[d]uring and as a result of the altercation," he suffered multiple cuts, bruises, and lacerations to his neck, shoulders, back, legs, face and wrist. Plaintiff claims he felt humiliated and degraded and suffered extreme anxiety, stress, and emotional turmoil because he thought he was going to be killed. Plaintiff asserts he still suffers extreme anxiety and difficulty sleeping and often awakes with night sweats and terror from being choked, tased, and struck with a closed fist and feeling like he is suffocating. Plaintiff alleges he also has difficulty "dealing with and being around staff where any sudden movements or loud noises" cause him severe anxiety, paranoia, post-traumatic stress disorder, and constant thoughts of suicide.

Accepted as true, Plaintiff's allegations are sufficient to warrant a response from Defendants. *See Wilhelm v. Rotman*, 680 F.3d 1113 (9th Cir. 2012). The Court will require Defendants Taylor and Carter to answer the Third Amended Complaint in their individual capacities only.

Although Plaintiff has stated a claim against Defendant Doe #1, the Court will not require service on Defendant Doe #1 at this time because it is, in most instances, impossible for the United States Marshal or his designee to serve a summons and complaint upon an anonymous defendant.

The Ninth Circuit has held that where identity is unknown prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). The Court will allow Plaintiff 120 days in which to discover the actual name of Defendant Doe #1, through subpoena or otherwise, and to substitute the Defendant's actual name by filing a "notice of substitution." *See id.* The Court may dismiss without prejudice

Defendant Doe #1 if Plaintiff fails to timely file a notice of substitution, unless Plaintiff seeks and is granted an extension of time.

**IV.     Warnings**

    **A.     Release**

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

    **B.     Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

    **C.     Copies**

Because Plaintiff is currently confined in an Arizona Department of Corrections, Rehabilitation & Reentry Complex or Private Facility subject to General Order 23-19, Plaintiff can comply with Federal Rule of Civil Procedure 5(d) by including, with every document Plaintiff files, a certificate of service stating that this case is subject to General Order 23-19 and indicating the date the document was delivered to prison officials for filing with the Court. Plaintiff is not required serve Defendants with copies of every document or provide an additional copy of every document for the Court's use.

**If** Plaintiff is transferred to a facility other than one subject to General Order 23-19, Plaintiff will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a copy of every document Plaintiff files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D.     Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's Motion for Extension of Time (Doc. 18) is **granted** insofar as the Court will accept the Third Amended Complaint as timely filed.

(2)     Plaintiff's official-capacity claims are **dismissed**.

(3)     The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants Taylor and Carter.

(4)     Plaintiff must complete[3] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(5)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Third Amended Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(6)     The United States Marshal must retain the Summons, a copy of the Third Amended Complaint, and a copy of this Order for future use.

(7)     The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure and Rule 4(j)(2) of the Federal Rules of Civil Procedure

---

[3] If a Defendant is an officer or employee of the Arizona Department of Corrections, Rehabilitation and Reentry, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections, Rehabilitation and Reentry unless the officer or employee works there.

and Rule 4.1(c) of the Arizona Rules of Civil Procedure. The notice to Defendants must include a copy of this Order.

(8)   A Defendant who agrees to waive service of the Summons and Third Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(9)   The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a)   personally serve copies of the Summons, Third Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b)   within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Third Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(10)   Defendants Taylor and Carter must answer the Third Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(11)   Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(12)   Within **120 days** from the filing date of this Order, Plaintiff must file a "Notice of Substitution," substituting Defendant Doe #1's actual name. The Court may dismiss without prejudice Defendant Doe #1 if Plaintiff fails to timely file a notice of substitution, unless Plaintiff seeks and is granted an extension of time.

(13)   This matter is referred to Magistrate Judge John Z. Boyle pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 11th day of February, 2025.

James A. Teilborg
Senior United States District Judge

**TERMPSREF**